(C.D. 4289)

LE JEUNE, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 29, 1971)

*Glad & Tuttle* (*Hudson F. Edwards* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*John A. Winters* and *Robert Blanc*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Judge: The merchandise involved in this case consists of articles described on the invoice accompanying the protest as "Mfg. Raffia, TURABAST, à ca. 22m/24 yds." Plaintiff claims that the commercial and more appropriate description of the product is by its trade name, "Swistraw." The imported product was assessed with duty at 22 per centum ad valorem under item 310.91, Tariff Schedules of the United States, as "Yarns put up for handwork, * * * of man-made fibers." Plaintiff contends that the merchandise is properly classifiable under item 309.21 of said tariff schedules, as modified by T.D. 68–9, at 20 per centum ad valorem as strips (in continuous form), whether known as artificial straws, yarns, or by any other name, not laminated, and valued over $1 per pound. A claim for classification under item 222.62, as articles of raffia has not been pressed and is deemed abandoned.

The pertinent provisions of the Tariff Schedules of the United States, as modified, are as follows:

Schedule 3 – Part 1

Subpart E. – Man-made Fibers

Subpart E headnotes:

\* \* \* \* \* \* \*

3. For the purposes of this subpart—

\* \* \* \* \* \* \*

(d) The term "strips" embraces strips (including strips of laminated construction), whether or not folded lengthwise, twisted, or crimped, which in unfolded, untwisted, and uncrimped condition are over 0.06 inch but not over one inch in width and are not over 0.01 inch in thickness; * * *

*　　*　　*　　*　　*　　*　　*

(g) The term "in continuous form", as used with reference to filaments and strips, refers to such articles when over 30 inches in length; * * *

*　　*　　*　　*　　*　　*　　*

Strips (in continuous form), whether known as artificial straw, yarns, or by any other name:
　　Not laminated:

*　　*　　*　　*　　*　　*　　*

| | | |
|---|---|---|
| 309. 21 | Valued over $1 per pound_____ | 20% ad val. |

*　　*　　*　　*　　*　　*

Yarns put up for handwork, and sewing threads, of man-made fibers:

*　　*　　*　　*　　*　　*　　*

| | | |
|---|---|---|
| 310. 91 | Valued over 90 cents per pound__ | 22% ad val. |

The official papers together with the invoice and entry papers are in evidence. Plaintiff has introduced many exhibits and has called one witness. Defendant introduced one exhibit and also called one witness.

Plaintiff's exhibits consist of an illustrative sample of the imported merchandise described as Mfg. Raffia Turabast; an illustrative sample of the imported merchandise described as Mfg. Raffia Turabast, Luster; various booklets written by plaintiff's witness, the president of the importing firm, describing the ultimate uses of the imported product; a sample of material used to illustrate plaintiff's witness' definition of yarn, i.e., a collection of strands of fibers twisted together; samples of representative articles constructed from the imported material; a sample of material which plaintiff's witness designates and sells as yarn (also an aggregate of fibers twisted together); a booklet which depicts uses of the imported material and other material described as yarn offered to show that the imported material and yarn are commercially distinguishable; an article produced from two forms of material, one of which is the imported merchandise, the other commercially described as yarn. Plaintiff claims this exhibit depicts the dissimilarity between the two types of material.

Defendant's sole exhibit was a page from a book entitled "*Weaving Is For Anyone*," by Jean Wilson.

The remainder of the record consists of the testimony of Mrs. LeJeune W. Ackerman for the plaintiff and Debra Rapoport for the defendant.

Mrs. LeJeune W. Ackerman testified that since 1962 she has been president of LeJeune, Inc., an importer and wholesale distributor of craft and needlework products. As president, she performs the usual administrative duties and also works on the development of new products and the writing and publishing of booklets teaching others how to use her products. She became familiar with articles described as yarns about 35 years ago while in high school. There she knitted, made her own clothes and demonstrated methods of evaluating fabric construction in terms of fiber content. She is a weaver and has exhibited her products in art shows as well as at weavers' conferences. Her firm commercially packages and sells yarns.

Mrs. Ackerman stated she was familiar with the articles described as "manufacture or mfg. Raffia Turabast" and currently imports an article so described. Exhibits 1 and 2 were received in evidence as illustrative of the merchandise, although not from the shipment covered by the entry. The witness said the merchandise was ordered by specification and that there had been no change in the specification of, or construction of, this product since January 1969, the date of importation of the merchandise under protest. The samples consist of skeins of a thin, flat, solid material which is folded or crimped and has somewhat the appearance of ribbon or raffia. Exhibit 1 is blue in color and has a dull finish. Exhibit 2 is rose-colored and has a shiny finish.

Mrs. Ackerman first became familiar with a similar product about 15 years ago when it was called Milano straw. At that time it was narrower and was used to crochet straw dresses. In late 1961 she first saw the article in the particular form that it now appears. Since then she has worked many projects with this material, obtained the import rights for the product, and formed a company to market it. The product is now known by its trademark name of Swistraw Ribbon.

Mrs. Ackerman has personally taught the use of this product in the formation of various decorations, crocheting straw hats, handbags, place mats, wrapping on lampshades, etc. She has written books describing its uses. In attempting to distinguish Swistraw Ribbon from yarn, which she also sells, Mrs. Ackerman stated that yarn was a collection of fibers or strands that are twisted to form a long strand. Sometimes they are matted or pressed together rather than actually twisted. On the other hand, she described her product, Swistraw Ribbon, as a flat single strand. Mrs. Ackerman is familiar with the products of her competitors similar to her own, many of which include on their labels the word, straw.

On cross-examination, Mrs. Ackerman testified that she considered the merchandise at bar to be properly described as "put up for hand-work," that the merchandise is ordered per sample, that a strip is not specified in the order and that the merchandise is used for weaving.

Defendant's witness, Debra Rapoport, testified that she was by profession a weaver and textile designer. She has been employed teaching weaving in various places including the University of California and the University of California Extension in San Francisco. She holds a B.F.A. in painting and design from Carnegie Institute of Technology in Pittsburgh, and has an M.A. from C.C. Her college courses exposed her to various techniques of weaving and knitting and gave her a good working knowledge of textile construction. She has had photographs of some of her work published by the Museum of Modern Art in New York and the magazine "Vogue."

The witness stated she was familiar with the imported product, having incorporated it in several pieces of her own work. She was also familiar with the term "yarn," and testified that it applied to almost any kind of material that she could use in her work. This includes anything that is linear and flexible and can be interlaced or interwoven. In her opinion the product in question may be considered yarn in that it is linear, flexible and capable of being used for hand weaving.

On cross-examination Miss Rapoport said that products such as straw, hair, nylon fish line and tubing all conform to her definition of yarn as anything continuous in length, flexible, and linear. In answer to a question from the bench, Miss Rapoport responded that even steel mats woven out of cable would be considered made of yarn in that the cable is linear, flexible and capable of being woven.

During the course of the trial, the trial judge directed that the samples, exhibits 1 and 2, be sent to the United States Customs Laboratory for determination of the length, width, and thickness of the material, and whether it is laminated. The report, which was received subsequent to the trial, states:

|  | Exhibit 1, blue color | Exhibit 2, red color |
| --- | --- | --- |
| 1. Length | 69 feet (estimated) | 73 feet 2 inches |
| 2. Width | 0.71 inch | 0.79 inch |
| 3. Thickness | 0.0035 inch | 0.0035 inch |
| Whether laminated | not laminated | not laminated |

Defendant claims that the analyses may not be used to show that the articles at bar fall within the dimensional requirements for strips as set forth in headnote 3(d), part 1E, schedule 3, *supra*, on the ground that the evidence does not establish that the samples are identical with

the imported merchandise. On this point, Mrs. Ackerman testified that she has been familiar with this product for a number of years; that it is ordered to specification, and that there has been no change in the specifications and construction of the product since the importation of this merchandise in January 1969. In the absence of evidence to the contrary, we find this testimony sufficient to establish the identity of the samples with the imported merchandise.

The issue before us is whether the merchandise is classifiable as yarn put up for handwork, or strips, whether known as yarn or by any other name. The merchandise has been put up for handwork and is capable of being used, and has in fact been used, in the same manner as yarn. It is in strip form and appears to be a monofilament.

Based on the foregoing, plaintiff contends that the product should be classified as a strip under item 309.21 for tariff purposes. Plaintiff claims that Congress has limited the scope of the term "yarn" to multi-filament material; that a monofilament or a strip cannot be a yarn, and that it is the form of the product, not its use, which is determinative.

On the other hand, defendant asserts that the merchandise should be classified as yarn under item 310.91; that a monofilament can be a yarn and that the use to which a product is put governs, rather than the product's form.

Monofilaments have been included within the term "yarn" in recent dictionary definitions (Webster's Third New International Dictionary, 1963; Man-Made Textile Encyclopedia, 1959) and by the court in *Chester Tricot Mills, Inc.* v. *United States*, 56 Cust. Ct. 532, C.D. 2695 (1966), appeal dismissed 53 CCPA 155 (1966), a case arising under the Tariff Act of 1930. There the question was whether the merchandise, a drawn and twisted filament, which, after importation, was used directly on knitting machines, was classifiable as a filament or a yarn of a synthetic textile. The court held it was a yarn, stating (p. 539):

> It is apparent from the foregoing that the term "yarn," as applied to the form of a substance, is nonselective for tariff purposes. In that context, it can and does embrace monofilaments, parallel filaments, twisted filaments, and plied filaments, and, therefore, when so construed, does not permit an intelligible separation of the various forms of strands provided for in schedule 13. The term becomes distinctive and determinative of separate tariff enumerations when it is defined, not by reference to form but rather by reference to use. Then it is possible to differentiate between filaments and yarns as provided for in paragraph 1301, *supra*.

The instant case, however, has arisen under the Tariff Schedules of the United States. In schedule 3, part 1E, thereof, which covers man-made fibers, Congress has distinguished monofilaments, plexi-form filaments, strips, grouped filaments and strips, fibers not carded,

combed or otherwise processed, textile fibers carded, combed or otherwise processed, but not spun, yarns of man-made fibers, and yarns put up for handwork. Included in headnote 3 to part 1E are definitions of a number of the foregoing products in terms of their form, not their use. Strips, as defined in headnote 3(d), *supra*, must be over 0.06 inch but not over one inch in width and not over 0.01 inch in thickness, and may be laminated, folded lengthwise, twisted or crimped. The Tariff Classification Study of November 15, 1960 points out that man-made fibers must be described in terms of material and physical form and dimension because the material and physical form are completely within the control of man. (Schedule 3, p. 44.) The Study states further (pp. 48, 49):

> * * * In the existing provisions of paragraph 1301, the distinction between singles (monofilaments) and grouped filaments, on the one hand, and continuous-filament yarns, on the other hand, is not made clear. Monofilaments in certain uses are yarns. Likewise, grouped filaments in certain uses are so-called "zero-twist" yarns. In a properly aligned schedule for man-made fibers, it is highly desirable that artificial separations not be made on the basis of such uses regardless of what the chief use of the particular monofilament or grouped filaments may seem to be. There are numerous sizes of filaments, made of a wide variety of materials, consumed in many uses. To purport to separate these filaments into yarn or other use classes is patently unrealistic and leads to administrative confusion and classification anomalies and uncertainties.

> \*    \*    \*    \*    \*    \*    \*

> * * * In order to avoid conflict with other tariff descriptions, "strips" are covered by the provisions therefor whether known as artificial straw, yarns, or by any other name. In accordance with the provisions of headnote 3(d), strips are included even if folded lengthwise, twisted, or crimped. The width and thickness measurements, however, would be obtained, if needed, by restoring such products to their original form by unfolding, untwisting, etc.

It is clear, therefore, that Congress intended form, rather than use, to govern the classification of the man-made fibers, wastes, yarns, and threads covered by schedule 3, part 1E, and that merchandise in the form of strips, as defined in the headnote, is to be classified as such, and not as yarn, whether or not known or used as yarn.

Since the merchandise involved herein meets the requirements of the definition of strips, it is properly classifiable under item 309.21, as claimed. To that extent the protest is sustained and judgment will be rendered for the plaintiff.